**Larry JOHNSON and Marvin Johnson, Plaintiffs,**

**v.**

**LAND O' LAKES, INC., Defendant.**

**No. C 96–3079–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

Aug. 21, 1998.

Glenn L. Norris, Hawkins & Norris, Des Moines, IA, for Plaintiffs.

Lawrence A. Moloney, Doherty, Rumble & Butler, Minneapolis, MN, for Defendant

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFFS' MOTION IN LIMINE

BENNETT, District Judge.

This matter comes before the court pursuant to plaintiffs' July 24, 1998, motion in limine. Plaintiffs Larry and Marvin Johnson have moved to exclude certain evidence, primarily pursuant to FED. R. EVID. 403, asserting that its probative value is exceeded by its potential for unfair prejudice. The Johnsons seek to exclude the following kinds of evidence: (1) evidence about other HTA cases; (2) evidence of other settlements or offers of settlement in other HTA cases; (3) evidence that is not in writing of or concerning demands for reasonable assurances; (4) evidence of possible losses of other shareholders or patrons of Land O' Lakes; (5) evidence of subsequent acts by the Johnsons; (6) testimony of Diana Klemme; and (7) evidence of the claims of the parties in the summary judgment proceedings. Defendant Land O' Lakes resisted the motion on August 4, 1998.

■ Rule 402 of the Federal Rules of Evidence provides generally that "[a]ll relevant evidence is admissible," while "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402. Rule 403, however, provides that even some relevant evidence may be excluded:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403. As the Eighth Circuit Court of Appeals recently explained,

> Relevant testimony is assumed admissible, Fed.R.Evid. 402, unless its probative value is "substantially outweighed" by the possibility of unfair prejudice. Fed.R.Evid. 403. Once a party has demonstrated the relevance and probative value of the evidence, the role of the district court is simply to determine whether admission of the exhibit would create an "undue tendency to suggest decision on an improper basis." Notes of Advisory Committee, Fed. R.Evid. 403. A district court may exclude relevant evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Fed. R.Evid. 403.

*United States v. Mulder,* 147 F.3d 703, 707 (8th Cir.1998). The court will consider *seriatim* the categories of evidence the Johnsons seek to exclude to determine whether Rule 403 or some other rule of evidence should bar its admission.

■ First, the Johnsons seek to exclude evidence about other HTA cases pursuant to Rule 403. More specifically, they seek to prohibit testimony and comment about other HTA lawsuits that have been filed against producers by Land O' Lakes, or by other grain elevators, cooperatives, or grain companies, or lawsuits that have been filed by producers against Land O' Lakes, or other grain elevators, cooperatives, or grain companies, including, but not limited to, the allegations in and the outcomes of such lawsuits. They argue that exclusion of this evidence is appropriate, because this court has observed that each HTA case is dependent upon the specific contracts and circumstances involved. Land O' Lakes has no objection to this evidentiary limitation. The court agrees that such evidence is only marginally relevant, and if relevant at all, is unfairly prejudicial, because it presents serious potential for confusion and for decisions on an improper basis, such as conformance with other cases, rather than upon evaluation of the evidence and arguments in this case. FED. R. EVID. 403. This evidence is also likely to cause "undue delay," another ground for exclusion under Rule 403. Therefore, this portion of the Johnsons' motion in limine will be granted.

Exclusion of the second category of evidence—evidence of other settlements or offers of settlement in other HTA cases—is more contentious. The Johnsons contend that the court should preclude any evidence, testimony, or mention of settlements, workouts, or other arrangements among and between any producer with HTAs and Land O' Lakes, whether at the Rockwell Ag Center, or at any other facility operated by Land O' Lakes, because such testimony or evidence would be in the nature of settlement discussions or compromises of disputed claims. This argument appears to be founded on FED. R. EVID 408, not FED. R. EVID. 403, the authority cited as the general authority for the Johnsons' motion. Land O' Lakes specifically contends that this evidence may not be excluded pursuant to Rule 408, because that rule applies only to settlement or compromise of a "claim," citing *Crues v. KFC Corp.,* 768 F.2d 230, 233 (8th Cir.1985), and Land O' Lakes asserts that it entered into negotiations with various producers, evidence of which may be relevant here, prior to the time any "claim" existed.

Rule 408 of the Federal Rules of Evidence provides, in pertinent part, as follows:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise *a claim which was disputed* as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible....

FED. R. EVID. 408 (emphasis added). Land O' Lakes is correct that the Eighth Circuit Court of Appeals has explained that "Rule 408 applies only to an offer to compromise a 'claim.'" *See Crues,* 768 F.2d at 233. In *Crues,* the court held that "it is not clear that Crues had a claim against KFC in August 1977," the time at which KFC made two offers to convert Crues's fish franchise to a chicken franchise, offers Crues argued were inadmissible as offers to compromise under Rule 408. *Id.* The court noted that, contrary

to Crues's contention that he had a "claim" at that time, "his actions at that time showed his intent to proceed with the fish franchise. That the same offer was made after litigation commenced is not a reason to exclude proof of the offer in its initial context." *Id.* Similarly, Land O' Lakes contends that it engaged in various discussions and negotiations with the Johnsons and other producers prior to the time at which a "claim" existed, including discussions of alternatives for meeting obligations under outstanding HTAs, and evidence of those discussions is therefore not barred by Rule 408. This argument requires exploration in further detail.

In *Wood v. Minnesota Mining and Mfg. Co.*, 112 F.3d 306 (8th Cir.1997), the Eighth Circuit Court of Appeals was presented with the defendant's argument that "in order for Rule 408 to be operative, litigation must be taking place or threatened." *Wood*, 112 F.3d at 310. The court did not reach that issue, however, because the court found that the evidence sought to be precluded pursuant to Rule 408 was not relevant, or if relevant, was unfairly prejudicial. *Id.* However, the Eighth Circuit Court of Appeals noted that the defendant's argument was founded on *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 50 F.3d 476, 480 (7th Cir.1995). In *S.A. Healy*, the court considered the question of when there is a "claim" within the meaning of Rule 408 as follows:

> The sewage authority complains about the admission into evidence of a statement by its engineer that Healy's claim for a price adjustment under the differing site condition clause "probably has merit." Rule 408 of the Federal Rules of Evidence forbids the use of evidence of attempts to compromise a claim to prove the claim. The purpose of the rule is to facilitate the settlement of disputes by encouraging the making of offers to compromise. *Winchester Packaging, Inc. v. Mobil Chemical Co.*, 14 F.3d 316, 320 (7th Cir.1994); *Central Soya Co. v. Epstein Fisheries, Inc.*, 676 F.2d 939, 944 (7th Cir.1982); 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶¶ 408[01]-[02] (1986). The contract in this case contains a disputes clause, requiring submission to the engineer of "all claims by the Contractor

arising from interpretation of or performance under the Contract Documents." The engineer "shall issue his determination," which the contractor may appeal to the sewage authority's executive director. The differing site condition clause describes requests for price adjustments under the clause as "claims," and *the sewage authority believes that "claim" implies dispute. Not so. A dispute arises only when a claim is rejected at the initial or some subsequent level. Had the sewage authority accepted Healy's claim for a price adjustment, no dispute would have arisen. And it follows that until the rejection of that claim, no dispute had arisen. When the engineer remarked to Healy that its claim probably had merit, the claim had not yet been rejected. There was not yet a dispute and Rule 408 was inapplicable. General Leaseways, Inc. v. National Truck Leasing Ass'n*, 830 F.2d 716, 724 n. 12 (7th Cir.1987); *In re B.D. Int'l Discount Corp.*, 701 F.2d 1071, 1074 n. 5 (2d Cir.1983).

*S.A. Healy Co.*, 50 F.3d at 480 (emphasis added). Thus, under *S.A. Healy*, Rule 408 would not be applicable to discussions between Land O' Lakes and the producers concerning resolution of obligations under the HTAs until the parties' respective claims for performance had been rejected and an actual "dispute" had arisen. *See id.* This point, however, does not necessarily coincide with the filing of lawsuits.

A similar standard was articulated by the Federal Circuit Court of Appeals in *National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1197 (Fed.Cir.1996):

> The district court excluded evidence of the several communications between Presto and West Bend before patent issuance, the court describing them as settlement negotiations and thus subject to Fed.R.Evid. 408. Presto argues that these communications were not made in connection with a disputed claim and its negotiation and possible settlement, and thus were not settlement negotiations and should not have been withheld from the jury. Presto cites *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1372–73, 195

USPQ 417, 423 (10th Cir.1977), where prelitigation discussions were viewed as "business communications" and not settlement negotiations, and were admissible in evidence. In *Deere & Co. v. International Harvester Co.,* 710 F.2d 1551, 218 USPQ 481 (Fed.Cir.1983), *this court explained that exclusion of evidence under Rule 408 is limited to "actual disputes over existing claims,"* and held that an offer to license a patent when there was no charge of infringement was not an offer to settle a claim in dispute, and was admissible into evidence.
*National Presto Indus., Inc.,* 76 F.3d at 1197 (emphasis added). The court, however, declined to overturn the district court's exclusion of the evidence, because Presto had not shown that any improper exclusion of evidence prejudiced the outcome of the trial. *Id.* Thus, like the Seventh Circuit Court of Appeals in *S.A. Healy,* the Federal Circuit Court of Appeals requires more than discussions or "business communications," or even disagreements, between potentially adverse parties for their communications to fall within Rule 408: there must be an actual dispute as to existing claims.

When Rule 408 is applicable also troubled the Third Circuit Court of Appeals in *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.,* 56 F.3d 521 (3d Cir.1995). The district court in that case had found that even an apparent difference of opinion between the parties could trigger an exclusion under the rule, while the appellant argued that there must be a threat or contemplation of litigation that goes beyond conduct or statements made to resolve differences of opinion as to the validity or amount of a claim. *Affiliated Mfrs., Inc.,* 56 F.3d at 526. The Third Circuit Court of Appeals noted that some decisions had required that the discussions have "crystallized to the point of threatened litigation" before Rule 408 was triggered, citing *Big O Tire,* 561 F.2d at 1372–73, but instead relied upon other decisions to conclude that "the Rule 408 exclusion applies where an actual dispute or a difference of opinion exists, rather than when discussions crystallize to the point of threatened litigation." *Affiliated Mfrs., Inc.,* 56 F.3d at 527 (citing *Alpex Computer Corp. v. Nintendo Co.,* 770

F.Supp. 161 (S.D.N.Y.1991), and *Dallis v. Aetna Life Ins. Co.,* 768 F.2d 1303, 1307 (11th Cir.1985)). The Third Circuit Court of Appeals therefore upheld the district court's interpretation of Rule 408 as not constituting legal error, because "[a]s a matter of interpretation, the meaning of 'dispute' as employed in the rule includes both litigation and less formal stages of a dispute.... The district court properly interpreted the scope of the term 'dispute' to include *a clear difference of opinion between the parties here concerning payment of two invoices." Id.* at 528 (emphasis added). The court concluded further that the district court had not erred in determining that this point had been reached on the date of a meeting where one of the parties had prepared an evaluation of the disputed invoices to prepare to discuss a possible compromise at that meeting. *Id.*

■ Thus, the "trigger" for application of Rule 408, the existence of an actual dispute as to existing claims, appears to be whether the parties have rejected each other's claims for performance, *see S.A. Healy Co.,* 50 F.3d at 480 (until the rejection of a claim, no dispute had arisen to which Rule 408 could apply), or, to put it another way, whether the parties have reached a clear difference of opinion as to what performance is required. *See Affiliated Mfrs., Inc.,* 56 F.3d at 528. When this point is reached depends upon the circumstances, *see id.* (considering the factual context to determine whether Rule 408 had been triggered), and thus a determination of whether Rule 408 bars admission of discussions cannot be made without hearing evidence as to the context of the challenged discussions.

■ There is, however, another, perhaps more fundamental difficulty with invoking Rule 408 as the bar to the evidence the Johnsons seek to exclude. The Sixth Circuit Court of Appeals recently explained that the "general principle" is that " 'Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim.' " *Uforma/Shelby Business Forms, Inc. v. NLRB,* 111 F.3d 1284, 1293–94 (6th Cir.1997) (quoting 23 CHARLES ALAN

Wright & Kenneth W. Graham, Jr., Federal Practice And Procedure: Evidence § 5314 (1st ed.1980) at n. 25). Similarly, the Tenth Circuit Court of Appeals has observed that "Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated." *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir.1997); *accord Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 (10th Cir.1992). Thus, because the evidence of compromise of claims the Johnsons seek to preclude concerns different claims, *i.e.*, claims between Land O' Lakes and other producers, Rule 408 is not applicable.

However, that is not to say that the evidence should be admitted at trial, because the court recognizes that each of several producers has or may have had the same "claim"—that is, has the same cause of action based on similar contracts and circumstances—against a common party, Land O' Lakes, or that Land O' Lakes has or may have had the same "claim" against each of several producers, which seems to be the basis on which the Johnsons seek to exclude the evidence. As the Eighth Circuit Court of Appeals suggested in *Wood*, whether or not Rule 408 is applicable, the court must also consider whether the evidence sought to be excluded as evidence of settlement negotiations is relevant to issues in the case, pursuant to Rule 402, and if it is, consider also whether it is unfairly prejudicial, pursuant to Rule 403. *Wood*, 112 F.3d at 310. Another court has also found that evidence of settlement discussions that did not involve the same "claim," and therefore was not excludable under Rule 408, might nonetheless be excluded pursuant to Rule 402 or Rule 403. *See Orth v. Emerson Elec. Co.*, 980 F.2d 632, 639 (10th Cir.1992) (with respect to evidence regarding settlements that is not excludable pursuant to Rule 408, the court should evaluate the relevance of the evidence against its prejudicial effect as required by Rule 403).

■ The Johnsons specifically request that the court exclude evidence that Larry and Marvin Johnson are two of only five producers with HTAs at the Rockwell facility who did not settle with Land O' Lakes, because they argue that the prejudicial effect of this evidence is clear. Land O' Lakes countered that evidence of delivery by other producers may be highly relevant with respect to the CEA claims, and that the probative value of evidence that other producers ultimately delivered grain on the contracts or otherwise satisfied the contracts cannot be outweighed by any prejudice or confusion. Land O' Lakes also contends that evidence of such resolutions with other producers is relevant with respect to the effect of the June 6, 1996, letter, which the Johnsons contend constituted a breach of the contracts.

Because the court has granted summary judgment dismissing the CEA claims, Land O' Lakes' first ground for the relevance of the evidence of settlements with other producers has evaporated. As to the relevance of the response of other producers to the question of the impact of the June 6, 1996, letter, the court notes that in *Crues*, the Eighth Circuit Court of Appeals upheld the relevance of evidence of the conduct of other franchisees who elected not to proceed after receiving letters similar to one received by the plaintiffs cautioning them to reconsider starting construction of a fish franchise. *Crues*, 768 F.2d at 233. However, the holding in *Crues* does not answer the question of the potential for unfair prejudice of such evidence, or other evidence that other producers reached agreement with Land O' Lakes to satisfy their HTAs. *See* Fed. R. Evid. 403 (relevant evidence may be excluded if its probative value is outweighed by its potential for unfair prejudice); *Mulder*, 147 F.3d at 707. Evidence that other producers, indeed most other producers, responded in a different way from the Johnsons to letters from Land O' Lakes concerning resolution of their outstanding HTAs does have an "undue tendency to suggest decision on an improper basis." Fed. R. Evid. 403, Notes of Advisory Committee; *Mulder*, 147 F.3d at 707. It suggests a verdict based on sheer numbers, rather than an evaluation of the circumstances, claims, and arguments of these plaintiffs. Indeed, exclusion of this evidence is appropriate on much the same grounds that exclusion of evidence concerning other HTA lawsuits and their outcomes is excludable, and Land O' Lakes had no objection to exclusion of that evidence. Consequently,

this portion of the Johnsons' motion in limine, paragraphs 2 and 3, will be granted pursuant to Rule 403.

Next, the Johnsons have moved to exclude evidence that is not in writing of or concerning demands for reasonable assurances made by Land O' Lakes on or after May 15, 1996. The Johnsons point out that Iowa Code § 554.2609(1), part of Iowa's Uniform Commercial Code (UCC), requires that a demand for adequate assurances be in writing and that decisions of the Iowa Supreme Court demonstrate that "[t]he clear Iowa law is that when something is required by a statute to be in writing, the terms of the writing may not be modified or changed by parole [sic] or extrinsic evidence." Land O' Lakes counters that no demand for adequate assurances was made until a letter dated June 12, 1996, rather than on May 15, 1996. Furthermore, Land O' Lakes contends, assuming that the parol evidence rule could be applicable, it would not bar extrinsic evidence concerning modification of demands after June 12, 1996, only evidence of prior or contemporaneous matters. Finally, Land O' Lakes asserts that the parol evidence rule simply is not applicable to a written demand for assurances, because no authority supports such a contention, while authority exists considering prior and subsequent communications between parties concerning a demand for adequate assurances.

The court believes both parties have overstated the case for and against application of the parol evidence rule to written demands for assurances. Iowa Code § 554.2609(1) provides that "[w]hen reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance...." As Land O' Lakes, the court has found, and the Johnsons have cited, no decision applying the "parol evidence" rule to demands for adequate assurances. The most recent interpretation of Iowa Code § 554.2609(1) by an Iowa appellate court was in *S & S, Inc. v. Meyer*, 478 N.W.2d 857, 862–63 (Iowa Ct.App.1991). That decision notes first that

> [t]his section requires the demand for assurances be in writing. *See SPS Industries, Inc. v. Atlantic Steel Co.*, 186 Ga. App. 94, 96–98, 366 S.E.2d 410, 413–14, 6 U.C.C. Rptr.2d 122, 126 (1988); *USX Corp. v. Union Pacific Resources Co.*, 753 S.W.2d 845, 852–53, 7 U.C.C. Rptr.2d 100, 110 (Tex.App.1988); *Scott v. Crown*, 765 P.2d 1043, 1046, 7 U.C.C. Rptr.2d 464, 467 (Colo.App.1988); *Teeman v. Jurek*, 312 Minn. 292, 297, 251 N.W.2d 698, 701, 21 U.C.C. Rptr. 506, 510 (1977); R. Anderson, 4 *Uniform Commercial Code* § 2–609:10 at 218 (3rd ed.1983). Absent attenuating circumstances, this written demand is required before the demanding party may proceed with remedies for anticipatory breach under UCC 2–610 (Iowa Code § 554.2610). *See, e.g., Scott*, 765 P.2d at 1046, 7 U.C.C. Rptr.2d at 468–69; *Teeman*, 312 Minn. at 297, 251 N.W.2d at 701, 21 U.C.C.Rptr. at 510.

*S & S, Inc.*, 478 N.W.2d at 862–63. However, the rule that a demand for assurances must be in writing certainly does not say that extrinsic evidence of the circumstances surrounding a demand for assurances is inadmissible. This is so, because

> [w]hether the demanding party has reasonable grounds for insecurity is a question for the trier of fact. *See AMF, Inc. v. McDonald's Corp.*, 536 F.2d 1167, 1170, 19 U.C.C. Rptr. 801, 806 (7 Cir.1976); *SPS Industries, Inc.*, 186 Ga.App. at 96–97, 366 S.E.2d at 413, 6 U.C.C. Rptr.2d at 126–27; *Scott*, 765 P.2d at 1046, 7 U.C.C. Rptr.2d at 467. Likewise, whether the demand is adequate to put the other party on notice of the need for adequate assurances is also a question of fact. *USX Corp.*, 753 S.W.2d at 853, 7 U.C.C. Rptr.2d at 112; *see, e.g., Scott*, 765 P.2d at 1046–47, 7 U.C.C. Rptr.2d at 468–69.

The adequacy of the assurance is likewise a question of fact. *American Bronze Corp. v. Streamway Products*, 8 Ohio App.3d 223, 456 N.E.2d 1295, 1303, 37 U.C.C. Rptr. 687, 695 (1982); *see* Anderson, 4 *Uniform Commercial Code* § 2–609:1, Official Comment 4 at 212–13. Whether a breach occurred justifying the sellers' cancellation is a fact question. *See, e.g., Nora Springs Co-op. Co. [v. Brandau]*, 247 N.W.2d [744] at 749, 20 U.C.C.

Rptr. [909] at 915–16 [(Iowa 1976)]. All the factors are to be evaluated according to the standard of commercial reasonableness under the particular circumstances of the case. *See* Iowa Code § 554.2609(1), (2), and (4); Anderson, 4 *Uniform Commercial Code* § 2–609:1, Official Comment 1–6 at 211–14; *see, e.g., American Bronze Corp. [v. Streamway Products],* 8 Ohio App.3d 223, 456 N.E.2d [1295] at 1303, 37 U.C.C. Rptr.2d [687] at 695.

*Id.* at 863. Thus, the terms of a demand for adequate assurances must be in writing, *see id.* at 862, and consequently the Johnsons are correct insofar as they argue that the written demand speaks for itself as to its terms. However, evidence of the context in which the demand is made is certainly relevant and admissible. *See id.* at 863. Furthermore, the fact that a demand for assurances must be in writing does not, *a fortiori,* mean that evidence of *subsequent* negotiations or communications between the parties to resolve their dispute, *i.e.,* evidence of what the parties subsequently discussed as adequate assurances or performance to resolve the demand, is admissible, because such evidence does not go to the terms, content, interpretation, or justifiability of the *original,* written demand. As the Iowa Supreme Court explained, even the parol evidence rule "does not bar evidence of *subsequent* negotiations to show modification of a written contract." *Whalen v. Connelly,* 545 N.W.2d 284, 290–91 (Iowa 1996) (emphasis added). Negotiations after a demand for assurances, if anything, go to the content of a modification of the contract in question, the underlying HTA, not to a modification, alteration, or explanation of the terms of the unilateral demand for assurances. Thus, this portion of the Johnsons' motion in limine will be denied to the extent that it seeks to preclude relevant and admissible evidence regarding the circumstances in which any demand for adequate assurances was made or evidence of any negotiations subsequent to such a written demand. However, the motion will be granted to the extent that evidence may not be proffered to change the written terms of a demand for adequate assurances.

Land O' Lakes does not object to most of the remaining evidentiary limitations the Johnsons seek, or those limitations are no longer necessary in light of this court's ruling granting summary judgment in favor of Land O' Lakes on the Johnsons' CEA claims. Land O' Lakes does not object to the Johnsons' requested exclusion of evidence that Land O' Lakes' patrons may have lost equity as a result of the HTA program. The court agrees that such evidence would not be relevant to any question of Land O' Lakes' damages. Therefore, this portion of the Johnsons' motion in limine will be granted. *See* FED. R. EVID. 402 (irrelevant evidence is inadmissible). Nor does Land O' Lakes object to exclusion of reference to any claims made by either party that were decided upon Land O' Lakes' motion for summary judgment. The court also agrees that this evidence is not relevant, *see* FED. R. EVID. 402, and does have some potential for confusion or prejudice, as it might prompt the jury to decide that if some of the Johnsons' claims are legally insufficient, all must be inadequate. Therefore, this evidence too will be excluded. Finally, as to the Johnsons' motion to exclude the testimony of Diana Klemme, Land O' Lakes asserted that this testimony would only be relevant "if the trial of this matter involves issues arising under the Commodities Exchange Act." Because the trial does not now involve such claims, the court assumes that Land O' Lakes has no intention to call Diana Klemme and will grant the Johnsons' motion to exclude her.

■ There remains, however, one more contentious issue. That issue is the question of the admissibility of evidence of subsequent acts by the Johnsons, specifically, their delivery of grain to entities other than Land O' Lakes during 1995, 1996, 1997, and 1998. Although the Johnsons contend that such evidence is not relevant or material to any issue in the lawsuit and has no bearing on Land O' Lakes' damages claims, the court disagrees. Land O' Lakes argues that such evidence is relevant to the Johnsons' capacity to deliver grain and the quantity of grain they could deliver, the availability of a cash market, and the fact that the Johnsons were capable of delivering grain elsewhere while refusing to deliver grain to the Rockwell Ag Center. The court also finds this evidence

relevant and not unfairly prejudicial: The fact that the Johnsons had grain but failed to deliver it to the Rockwell Ag Center does go to the question of whether they breached agreements for the delivery of grain in 1996 or pursuant to the "multi-year plan" they contend the HTAs provided for.

THEREFORE, the Johnsons' motion in limine is

1. **granted** as to, and the parties are prohibited from presenting testimony and comment about, evidence of other HTA lawsuits that have been filed against producers by Land O' Lakes, or by other grain elevators, cooperatives, or grain companies, or lawsuits that have been filed by producers against Land O' Lakes, or other grain elevators, cooperatives, or grain companies, including, but not limited to, the allegations in and the outcomes of such lawsuits.

2. **granted** as to, and the parties are prohibited from presenting, evidence concerning other settlements or offers of settlement in this and other HTA cases.

3. **denied** as to evidence regarding the circumstances in which any demand for adequate assurances was made or evidence of any negotiations subsequent to such a written demand, but granted as to, and the parties are prohibited from presenting testimony to change the written terms of a demand for adequate assurances.

4. **granted** as to, and the parties are prohibited from presenting, evidence that Land O' Lakes' patrons may have lost equity as a result of the HTA program.

5. **granted** as to, and the parties are prohibited from presenting, references to any claims made by either party that were decided upon Land O' Lakes' motion for summary judgment.

6. **granted** as to, and the parties are prohibited from presenting, the testimony of Diana Klemme.

7. **denied** as to evidence that the Johnsons delivered grain to entities other than

Land O' Lakes during 1995, 1996, 1997, and 1998.

**IT IS SO ORDERED.**

### ORDER ON PLAINTIFFS' MOTION IN LIMINE REGARDING SUBPOENA TO DAVID SEEHUSEN

This matter comes before the court pursuant to plaintiffs' "Motion in Limine Regarding Subpoena To David Seehusen, Officer of the Defendant Land O' Lakes, Inc.," received by facsimile by the court on August 19, 1998. Defendant Land O' Lakes resisted the motion, also by facsimile, on August 20, 1998.[1] In their motion, plaintiffs Larry and Marvin Johnson seek a ruling that David Seehusen is an officer of defendant Land O' Lakes, he is subject to the subpoena power of the court, he should be required to attend the trial of this matter in accordance with a subpoena they have issued, and such other relief the court deems appropriate. Land O' Lakes has professed itself unwilling to produce Mr. Seehusen voluntarily, both at the final pretrial conference and in its resistance to the present motion in limine.

The Johnsons assert that David Seehusen, the vice president of seed and member operations, is subject to the court's subpoena power, although he lives and works more than 100 miles from Fort Dodge, Iowa, where this trial is scheduled, because FED. R. CIV. P. 45(c)(3)(A)(ii) does not provide for quashing a subpoena to an officer of a party who must travel more than 100 miles to testify, although it does provide for quashing a subpoena to a non-party witness in those circumstances. Land O' Lakes asserts that Rule 45(c)(3)(A)(ii) does not extend the court's subpoena power beyond 100 miles from the place of trial, as defined in Rule 45(b)(2), simply because the witness subpoenaed is an officer of a party.

Rule 45(b)(2) of the Federal Rules of Civil Procedure, in pertinent part, provides as follows:

> Subject to the provisions of clause (ii) of subparagraph (c)(3)(A) of this rule, a subpoena may be served at any place within

---

1. No "hard copy" of the motion has yet been filed with the Clerk of Court, although the Clerk did receive a "hard copy" of the resistance this morning.

the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the ... trial ... or at any place within the state where a state statute or rule of court permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the ... trial[.]

FED. R. CIV. P. 45(b)(2). Thus, the subpoena power of the court extends throughout the district and into a "bulge" beyond the borders of the district that is within 100 miles of the place of trial, in this case, Fort Dodge, Iowa. David Seehusen lives and works outside of this district and outside of this 100–mile "bulge."[2]

Rule 45(c)(3)(A)(ii), upon which the Johnsons rely, provides in pertinent part as follows:

> On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it ... requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person[.]

FED. R. CIV. P. 45(c)(3)(A)(ii).[3] Rule 45(c)(3)(A)(ii) simply does not extend the range of this court's subpoena power, although it does provide that the court may quash a subpoena, otherwise within its power, for a *non-party* witness, under certain circumstances. There simply is no "negative implication," upon which the Johnsons appear to rely, that Rule 45(c)(3)(A)(ii) subjects to subpoena officers of parties who are more than 100 miles from the place of trial whether or not they are within the range of the subpoena power defined in Rule 45(b)(2).

In short, Rule 45(b)(2) defines the court's subpoena power, and David Seehusen is beyond it, while Rule 45(c)(3)(A)(ii) allows for quashing a subpoena otherwise within the court's subpoena power, but in circumstances not applicable here. This is what is meant in Rule 45(b)(2) by the statement that the court's subpoena power as defined in that subsection of the rule is "subject to" the provisions of Rule 45(c)(3)(A). David Seehusen is not subject to the subpoena power of the court as defined in Rule 45(b)(2).

Furthermore, Rule 43 does not require David Seehusen's live testimony, as the Johnsons suggest, because it provides that testimony shall be in open court unless some other federal law or rule provides otherwise, and in this case, Rule 45(b)(2) provides otherwise. Finally, Rule 32(a)(3) specifically provides the avenue for presenting David Seehusen's testimony by deposition, as Land O' Lakes has suggested. David Seehusen's unavailability to testify in person falls precisely within Rule 32(a)(3), which provides that "[t]he deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds ... that the witness is at a greater distance than 100 miles from the place of trial or hearing[.]" FED. R. CIV. P. 32(a)(3)(B).[4]

THEREFORE, the Johnsons' "Motion in Limine Regarding Subpoena To David Seehusen, Officer of the Defendant Land O' Lakes, Inc.," is denied.

IT IS SO ORDERED.

---

2. The parties have not asserted that any Iowa Rule of Civil Procedure or statute would extend the range of this court's subpoena power. *See* FED R. CIV. P. 45(b)(2).

3. There is an exception, provided in Rule 45(c)(3)(A)(ii) and Rule 45(c)(3)(B)(iii), that a non-party witness may be compelled to travel more than 100 miles from any place within the state in which the trial is held, with the further exception that if the non-party witness incurs substantial expenses to travel more than 100 miles, the court may quash or modify the subpoena.

4. The exception to this rule, "unless it appears that the absence of the witness was procured by the party offering the deposition," *see* FED. R. CIV. P. 32(a)(3)(B), does not apply, because, even supposing that Land O' Lakes "procured" Mr. Seehusen's absence—which Land O' Lakes did not do simply by having him live and work outside the range of this court's subpoena power—the Johnsons, not Land O' Lakes, are the parties intending to call Mr. Seehusen, and consequently they are the parties "offering the deposition."