**TOP OF IOWA COOPERATIVE, an Iowa cooperative, Plaintiff,**

**v.**

**Virgil E. SCHEWE, Defendant.**

**No. C 96–3146–MWB.**

United States District·Court, N.D. Iowa, Central Division.

March 20, 2001.

Matthew L. Benda and Donald W. Savelkoul of Peterson, Savelkoul, Schlichting

& Davies, Ltd., in Albert Lea, Minnesota, for Virgil E. Schewe.

**MEMORANDUM OPINION AND ORDER REGARDING THE PARTIES' MOTIONS IN LIMINE**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. BACKGROUND .................................................971

II. LEGAL ANALYSIS .............................................971
 A. Applicable Standards .................................971
 B. Schewe's Motion In Limine ...........................972
 1. Delivery of and prices for Schewe's grain ..........972
 2. Limitation on damages evidence ....................974
 3. Evidence of the cancellation charge ................974
 4. Terms and performance of other producers' HTAs ...975
 C. Top of Iowa's Motion In Limine .......................975
 1. CBOT corn market since 1996 ......................976
 2. Testimony of Tim Dunn ............................976
 3. Discounting of Schewe's HTA receivables ...........977
 4. Evidence regarding other producers' HTAs ..........977
 5. Mr. Bierle's recollection ...........................977

III. CONCLUSION ................................................978

## I. BACKGROUND

This matter, which involves "hedge-to-arrive" or HTA contracts for the sale and purchase of grain, comes to trial on April 2, 2001, on plaintiff Top of Iowa Cooperative's claim of breach of contract against defendant Virgil Schewe and Schewe's counterclaims of breach of contract and breach of fiduciary duty against Top of Iowa. This matter is now before the court pursuant to motions in limine filed by Schewe on February 23, 2001, and by Top of Iowa on February 26, 2001. Top of Iowa resisted Schewe's motion in limine on March 8, 2001, and Schewe resisted Top of Iowa's motion in limine on March 13, 2001.

## II. LEGAL ANALYSIS

### A. Applicable Standards

The parties base their motions in limine primarily on the alleged irrelevance or prejudicial nature of certain challenged categories of evidence. Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Rule 402 of the Federal Rules of Evidence provides generally that "[a]ll relevant evidence is admissible," while "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402.

 Rule 403, however, provides that even some relevant evidence may be excluded:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations

of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403. Thus, " 'Rule 403 allows the district court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice.' " *United States v. Schumacher*, 238 F.3d 978, 980 (8th Cir.2001) (quoting *United States v. Davis*, 154 F.3d 772, 780 (8th Cir.1998), *cert. denied*, 525 U.S. 1169, 119 S.Ct. 1090, 143 L.Ed.2d 91 (1999)). "Rule 403 is concerned only with 'unfair prejudice, that is, an undue tendency to suggest decision on an improper basis.' " *United States v. Gabe*, 237 F.3d 954, 959–60 (8th Cir.2001) (quoting *United States v. Yellow*, 18 F.3d 1438, 1442 (8th Cir.1994)). The Eighth Circuit Court of Appeals has explained the balancing test of relevance against prejudice in more detail, as follows:

> Relevant testimony is assumed admissible, Fed.R.Evid. 402, unless its probative value is "substantially outweighed" by the possibility of unfair prejudice. Fed.R.Evid. 403. Once a party has demonstrated the relevance and probative value of the evidence, the role of the district court is simply to determine whether admission of the [evidence] would create an "undue tendency to suggest decision on an improper basis." Notes of Advisory Committee, Fed. R.Evid. 403. A district court may exclude relevant evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403.

*United States v. Mulder*, 147 F.3d 703, 707 (8th Cir.1998). A reviewing court will " 'give deference to a district court's decision under the Rule 403 balancing test and reverse only if there was a clear abuse of discretion.' " *Schumacher*, 238 F.3d at 980 (quoting *Davis*, 154 F.3d at 780).

This court will consider the parties' motions in limine in turn in light of these standards.

### B. *Schewe's Motion In Limine*

Schewe's motion in limine seeks the exclusion or limitation of five categories of evidence: (1) exclusion of any evidence regarding where Schewe delivered 10,000 bushels of grain in 1996 after Top of Iowa cancelled the HTA contracts at issue here; (2) exclusion of any evidence of the price Schewe received for his grain in 1995 and 1996; (3) limitation of evidence on Top of Iowa's request for damages to the offsetting price on April 16, 1996; (4) exclusion of evidence of Top of Iowa's request for a 15¢ per bushel cancellation charge; and (5) exclusion of evidence of other producers' HTA contracts and their performance or non-performance of those contracts. The court will consider the admissibility of these categories of evidence *seriatim*.

#### 1. *Delivery of and prices for Schewe's grain*

As to the first and second categories of evidence, Schewe contends that the undisputed facts in this case clearly indicate that the evidence is irrelevant and is offered only to incite some passion in the jury and to prejudice him unfairly by portraying him as "greedy." Specifically, Schewe contends that he attempted to deliver grain to Top of Iowa in the fall of 1995, but that Top of Iowa refused to accept his grain at that time. He contends further that the evidence shows that he delivered approximately 20,000 bushels of grain to Top of Iowa for cash early in 1996, which Top of Iowa accepted at cash prices, even though Top of Iowa knew that Schewe had only 30,000 bushels of grain on hand and had 30,000 bushels of grain outstanding on his HTA contracts. Schewe also contends that he offered to deliver his remaining 10,000 bushels of grain on April

11, 1996, that Top of Iowa sent him a letter on June 4, 1996, advising him that his HTAs had been cancelled, and that only then did he deliver his remaining grain to another elevator. Schewe contends that this evidence distinguishes his case from the facts in *Johnson v. Land O'Lakes*, 181 F.R.D. 388 (N.D.Iowa 1998), because, in his case, there is no inference that he refused to deliver his grain, but instead there is evidence of his repeated attempts to deliver, and evidence of actual delivery of grain, to Top of Iowa. Schewe contends that evidence of his grain sales and deliveries in 1995 and 1996 is not only irrelevant and prejudicial, but that the evidence would also be confusing to the jury, as it would add another layer of "pricing" evidence in this case. Top of Iowa, however, contends that Schewe's delivery of grain to Top of Iowa and other elevators for a cash price higher than the price set forth in his HTAs is relevant, in that it establishes that Top of Iowa had reason to doubt Schewe would deliver his grain under his HTAs and establishes exactly why Schewe repudiated his HTAs.

The court concludes that there is no adequate ground to exclude this evidence. First, evidence of how and at what price Schewe disposed of his grain in 1995 and 1996 is plainly relevant, and would generally be admissible, in a case involving alleged breach of HTA contracts for that grain, as it is probative of whether a breach occurred and what motivations or business justifications the parties had in the circumstances. *See* FED. R. EVID. 401 & 402. Moreover, the court is unpersuaded by Schewe's "prejudice" argument, pursuant to Rule 403, because it is not clear that evidence that Schewe may have disposed of his grain for cash at higher prices than he would have received had he delivered grain pursuant to the HTAs involves " 'unfair prejudice, that is, an undue tendency to suggest decision on an improper

basis.' " *Gabe*, 237 F.3d at 959–60 (quoting *Yellow*, 18 F.3d at 1442).

More specifically, the court finds that Schewe has not effectively distinguished this court's holding concerning the admissibility of similar evidence in *Johnson v. Land O'Lakes, Inc.*, 181 F.R.D. 388 (N.D.Iowa 1998). In *Johnson*, the elevator argued that evidence that the producers delivered grain to entities other than the elevator with which they had HTA contracts was relevant "to the [producers'] capacity to deliver grain and the quantity of grain they could deliver, the availability of a cash market, and the fact that the [producers] were capable of delivering grain elsewhere while refusing to deliver grain to the [elevator holding the HTAs]." *Johnson*, 181 F.R.D. at 395. The court, however, did not rule on the admissibility of the evidence on the ground that the producers "refused" to deliver the grain pursuant to the HTAs. Rather, the court ruled that the evidence was admissible, that is, relevant and not unfairly prejudicial, because "[t]he fact that the [producers] had grain but *failed* to deliver it to the [elevator with which they had HTAs] does go to the question of whether they breached agreements for the delivery of grain in 1996 or pursuant to the 'multi-year plan' they contend the HTAs provided for." *Id.* at 396 (emphasis added). Here, the evidence that Schewe had grain but *failed* to deliver it to *Top of Iowa pursuant to the HTAs* does go to the question of whether Schewe breached the HTAs for the delivery of grain in 1996. *Cf. id.* at 396. Here, Top of Iowa is entitled to argue that a reasonable inference from the evidence is that Schewe "refused" to deliver grain pursuant to the HTAs out of "greed," because he could obtain a better cash price, while Schewe is entitled to argue that a reasonable inference from the evidence is that he did everything he reasonably could

have to deliver grain pursuant to the HTAs, or that Top of Iowa permitted him to deliver grain for cash even though Top of Iowa was aware of his HTAs and his capacity to meet those contracts if he delivered grain for cash. Evidence framing issues in the case is not, in this court's view, evidence with " 'an undue tendency to suggest decision on an improper basis.' " *Gabe,* 237 F.3d at 959–60 (quoting *Yellow,* 18 F.3d at 1442).

Schewe's motion in limine will therefore be denied as to the evidence identified in the first and second categories.

### 2. Limitation on damages evidence

■ Next, Schewe contends that the court should limit evidence on Top of Iowa's request for damages to the offsetting price on April 16, 1996. Schewe contends that Top of Iowa notified him in early April of 1996 that it would set the basis on April 16, 1996, if he did not. He contends that he sent Top of Iowa a letter on April 11, 1996, disputing Top of Iowa's treatment of the HTAs and change in policy on "rolling" those contracts in the middle of the process, but that nowhere in that letter did he set the basis or authorize Top of Iowa to "roll" the HTAs to a later date, such as July 1996. Thus, he contends that Top of Iowa's decision to "roll" his HTAs to July 1996 was without his permission and was contrary to Top of Iowa's declared intention to set basis on the contracts on April 16, 1996. Consequently, he contends that Top of Iowa's alleged damages should be limited to the costs of buying out their positions on the Chicago Board of Trade (CBOT) as of April 16, 1996, the date on which they should have taken that action. Top of Iowa, however, points to evidence from Paul Nesler that Top of Iowa would not have "rolled" Schewe's HTAs to July 1996 without his permission. This conflict in the evidence, Top of Iowa contends,

provides a basis for admitting evidence of its damages after April 16, 1996.

Again, the court finds no ground for excluding the challenged evidence, because the challenged evidence frames the question for the trier of fact of the proper damages in the circumstances, and therefore is relevant, not unduly prejudicial, and hence admissible. *See* FED. R. EVID. 401, 402 & 403. Although Schewe has identified evidence supporting his contention that Top of Iowa is not entitled to damages after April 16, 1996, Top of Iowa has, perhaps just barely, generated a genuine issue of material fact as to whether it had Schewe's permission to "roll" his HTAs to a later date, thus entitling Top of Iowa to damages measured from a later date. More specifically, in light of the circumstances and claims in this case, the jury should be permitted to evaluate the credibility of Nesler's testimony, and to evaluate whether Top of Iowa's action in "rolling" Schewe's HTAs to July 1996 was a reasonable, if ultimately unsuccessful, attempt to mitigate damages by providing Schewe with a further opportunity to perform the HTAs instead of setting basis or cancelling the HTAs in April 1996, as well as whether any damages after April 1996 are "self-inflicted" by wrongful conduct and hence noncompensable.

Schewe's motion in limine will consequently be denied as to the challenged evidence in category three.

### 3. Evidence of the cancellation charge

■ The fourth category of evidence Schewe seeks to exclude is evidence of Top of Iowa's request for a 15¢ per bushel cancellation charge. Schewe contends that Top of Iowa has no contractual or legal basis for its claim to such a per bushel cancellation charge, because its only evidence in support of the claim is a hand-

written accounting. However, Top of Iowa contends that the cancellation charge is specifically permitted under the terms of Schewe's HTAs, offering in support of that contention Exhibit 2, which purports to be one of Schewe's HTAs that includes a term stating that "[a] penalty of 15 cents per bushel plus costs of maintaining the hedge may be assessed to the producer if the producer fails to perform on the contact." *See* Plaintiff's Exhibit 2. Because a contractual basis for the cancellation charge has been identified, evidence in support of that charge is relevant, not unduly prejudicial, and consequently admissible. *See* FED. R. EVID. 401, 402 & 403.

### 4. Terms and performance of other producers' HTAs

█ Finally, Schewe contends that, as in *Johnson v. Land O'Lakes, Inc.*, 181 F.R.D. 388, 390 (N.D.Iowa 1998), the court should exclude evidence regarding other producers' HTAs, lawsuits filed by and against other farmers, and other farmers' delivery or nondelivery on their HTAs. Schewe contends that such evidence threatens to confuse the jury and prevent the jury from making a decision based on the individual facts and evidence in this case. Because Top of Iowa believes that Schewe intends to offer evidence from various other producers regarding what Top of Iowa told them about the HTAs, Top of Iowa asks that, if the court allows such evidence, it should "be fair to both parties," either allowing testimony as to what was said to other parties by Top of Iowa, including Top of Iowa's witnesses, or preventing any testimony regarding what was said to other producers by Top of Iowa regarding HTAs.

For the same reasons similar evidence was excluded in *Johnson*, the court concludes that evidence of other producers' HTAs and their performance or non-per-

formance on those contracts is *not* admissible. Each HTA case is dependent upon the specific contracts and circumstances involved and evidence regarding other producers and other HTAs "is only marginally relevant, and if relevant at all, is unfairly prejudicial, because it presents serious potential for confusion and for decisions on an improper basis, such as conformance with other cases, rather than upon evaluation of the evidence and arguments in this case." *See Johnson*, 181 F.R.D. at 390 (citing FED. R. EVID. 403); *see also Schumacher*, 238 F.3d at 980 ("Rule 403 allows the district court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice.") (internal quotation marks and citations omitted); *Gabe*, 237 F.3d at 959–60 ("Rule 403 is concerned only with 'unfair prejudice, that is, an undue tendency to suggest decision on an improper basis.'") (quoting *Yellow*, 18 F.3d at 1442).

Thus, Schewe's motion in limine will be granted as to this category of evidence.

### C. Top of Iowa's Motion In Limine

In its own motion in limine, Top of Iowa seeks the exclusion of the following categories of evidence: (1) exclusion of evidence regarding what the corn market has done on the CBOT since January 1, 1997; (2) exclusion of the testimony of Tim Dunn; (3) exclusion of evidence that, on its balance sheets or other financial statements, Top of Iowa has discounted or "written off" the value of Schewe's HTA receivables; (4) exclusion of evidence of what Top of Iowa said to other producers regarding their HTAs; and (5) exclusion of any evidence of Mike Bierle's recollection of a meeting he had with Co–Bank on May 14, 1996. Again, the court will consider the admissibility of these categories of evidence *seriatim*.

### 1. CBOT corn market since 1996

■ Top of Iowa contends that the first category of evidence that should be excluded pursuant to its motion in limine is any evidence Schewe may attempt to present regarding what the corn market has done on the CBOT since January 1, 1997. Top of Iowa contends that, since Schewe's hedge positions were taken off the CBOT prior to 1997, what the market for corn on the CBOT did in 1997 and thereafter is irrelevant and inadmissible, because any actions Schewe would have taken from 1997 onward regarding his HTAs would be pure speculation.

Schewe counters that what happened to the corn market from 1997 onward is not speculative, and indeed, it is possible to determine exactly what the cash and CBOT prices were in 1997 and forward. This response is unavailing, because it is not Top of Iowa's contention that what the CBOT prices did in 1997 and thereafter is speculative, but that what Schewe would have done in response to those prices is speculative, because he no longer held any hedge positions into 1997.

Equally unavailing is Schewe's contention that, "[if] such evidence is excluded on other grounds (e.g. irrelevance or confusion of the jury), then such an exclusion would be identical to" exclusion of categories one and two in his own motion in limine. Schewe contends that, if Top of Iowa is allowed to present evidence of the cash price he received for his grain during the time frame following cancellation of the CBOT positions, then he should be allowed to present evidence of what happened to the cash and CBOT prices following cancellation. The court finds this argument confusing, because there clearly is a difference between Schewe's attempt to exclude evidence concerning where he delivered his grain *in 1996* after Top of Iowa cancelled the HTAs and what price he

received for his grain *in 1995 and 1996,* the first two categories of evidence he attempted to exclude, and Top of Iowa's attempt to exclude evidence concerning the activity of the CBOT corn market *in 1997 and thereafter,* because the categories of evidence challenged by Schewe do not relate to the same period as the evidence Top of Iowa seeks to exclude. Thus, contrary to Schewe's contention, there is no "identity" between exclusion of the evidence of CBOT activity *in 1997 and thereafter* and Schewe's attempt to exclude evidence of deliveries of and prices for *his* grain *in 1995 and 1996.*

However, Top of Iowa's argument for exclusion of evidence related to CBOT activity after the end of 1996 appears equally strange. It does not follow from the fact that Schewe's hedge positions were taken off the CBOT prior to 1997 that evidence of what the corn market did on the CBOT during 1997 and thereafter is irrelevant, because Schewe contends that *Top of Iowa improperly took his hedge positions off the CBOT. See* Counterclaim, Count IV, ¶ D (alleging breach of contract on the basis that Top of Iowa refused to allow Schewe to roll the contracts as permitted by their terms). If Top of Iowa improperly took Schewe's hedge positions off the CBOT, what the corn market on the CBOT did in 1997 is relevant to whether Schewe suffered any damages as a result of being deprived of his position on the CBOT. Top of Iowa has failed to demonstrate that the challenged evidence is irrelevant. *See* FED. R. EVID. 402 ("Evidence which is not relevant is not admissible," but "[a]ll relevant evidence is admissible, except as otherwise provided . . . ."). Therefore, this portion of Top of Iowa's motion in limine will be denied at this time.

### 2. Testimony of Tim Dunn

Next, Top of Iowa contends that testimony of Tim Dunn, Schewe's expert wit-

ness, in support of Schewe's claim that he was damaged by not being able to roll his HTAs is "highly speculative." Schewe contends that Tim Dunn's testimony concerning what the CBOT corn market did after his HTAs were cancelled is not speculative, but again, this misses Top of Iowa's central contention, which is that what is speculative is testimony concerning what *Schewe* would have done in light of activity of the corn market on the CBOT after 1996. Schewe also contends that exclusion of "any testimony" of Tim Dunn is overbroad.

There is a practical impediment to granting this portion of Top of Iowa's motion in limine, however. That practical impediment is that the court is unable to determine precisely what testimony by Mr. Dunn is challenged and on what basis Top of Iowa contends it is too "speculative" to be admissible. Certainly, Top of Iowa's motion is too scanty to justify a full-blown "*Daubert* hearing" regarding Mr. Dunn's testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *see also J.B. Hunt Transp., Inc. v. General Motors Corp.*, 243 F.3d 441, 443–44 (8th Cir.2001) ("We review the district court's decision to exclude expert testimony under *Daubert* for an abuse of discretion. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Under Federal Rule of Evidence 702, expert testimony is admissible when it will assist the trier of fact. *See also Daubert*, 509 U.S. at 597, 113 S.Ct. 2786 (concluding that the germane inquiry when determining admissibility of expert testimony is whether the testimony would assist the jury's understanding of the evidence). *Daubert* makes clear that the district court must 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.' 509 U.S. at 591, 113 S.Ct. 2786."). Therefore, this portion of Top of

Iowa's motion in limine will be denied at this time.

### 3. Discounting of Schewe's HTA receivables

The third category of evidence Top of Iowa seeks to exclude is evidence that, on its balance sheets or other financial statements, Top of Iowa has discounted or "written off" the value of Schewe's HTA receivables. This category of evidence need not detain the court long, as Schewe does not resist exclusion of this evidence. Therefore, Top of Iowa's motion in limine will be granted as to this evidence.

### 4. Evidence regarding other producers' HTAs

The fourth category of evidence that Top of Iowa seeks to exclude pursuant to its motion in limine is evidence of what Top of Iowa said to other producers regarding their HTA contracts. Top of Iowa contends that, unless these other producers were present at conversations between the parties to this lawsuit, their testimony is irrelevant regarding Schewe's dealings with Top of Iowa and Schewe's own HTAs. Schewe contends that this request mirrors his request to exclude the evidence in category five of his own motion in limine, so that if one party's motion is granted as to such evidence, the other party's motion should be granted as well. For the reasons stated above with regard to the fifth category of evidence challenged in Schewe's motion in limine, this portion of Top of Iowa's motion will be granted.

### 5. Mr. Bierle's recollection

Similarly, Schewe does not resist Top of Iowa's motion to exclude evidence in a fifth category, evidence of Mike Bierle's recollection of a meeting he had with Co–Bank on May 14, 1996. The court agrees with

the parties that such evidence is irrelevant and will exclude it pursuant to Rule 402 of the Federal Rules of Evidence, granting this part of Top of Iowa's motion in limine.

### III. CONCLUSION

For the reasons stated above,

1. Schewe's February 23, 2001, motion in limine is **denied** as to the evidence in categories 1 through 4 of the motion, but **granted** as to the evidence in category 5 of the motion.

2. Top of Iowa's February 26, 2001, motion in limine is **denied** as to the evidence in categories 1 and 2 of the motion, but **granted** as to the evidence in categories 3, 4, and 5.

**IT IS SO ORDERED.**