# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 96-2199

———————

Glen Wood, *
                        *
       Plaintiff-Appellee,    *
                        *
The Travelers Insurance     *
Company,                   *   Appeal from United States
                        *   District Court for the Eastern
       Intervenor-Appellee,   *   District of Arkansas.
                        *
      v.                    *
                        *
Minnesota Mining and       *
Manufacturing Company,     *
                        *
       Defendant-Appellant.    *

———————

Submitted:  January 15, 1996

Filed:  April 21, 1997

———————

Before LOKEN, BRIGHT and MORRIS SHEPPARD ARNOLD, Circuit Judges.

———————

BRIGHT, Circuit Judge.

Glen Wood sought damages after being struck by Minnesota Mining and Manufacturing Company's (3M) train while crossing 3M's tracks in his employer's truck.  The jury returned a $300,000 verdict in favor of Wood. 3M challenges the verdict and raises a variety of evidentiary issues.  We affirm.

**BACKGROUND**

Glen Wood drives a truck for Silica Transport. On April 10, 1992, Wood picked up a load at a 3M plant in his tractor-trailer rig and drove his truck through a 3M railroad crossing as a 3M train moved toward him. There were no crossbucks or lights at the crossing. The train engineer honked the horn, shouted and waved. Because the train was traveling backwards, the horn faced away from Wood who did not hear these noises from inside the cab of the truck. The 3M train ran into Wood's truck. The train engineer jumped off the train before the collision, thus, there was no one on board when the train struck Wood and the horn was not blowing in the final seconds before the collision.

Wood's employer, Silica Transport, paid 3M $28,000 for damage to 3M's train. Wood subsequently filed suit on April 12, 1994, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332 and seeking damages for personal injuries due to 3M's negligence. He alleged permanent injuries to his lower back and left shoulder, loss of earnings and earning capacity, and pain and suffering. A jury returned a verdict in Wood's favor and awarded him $300,000 in damages. 3M then filed a motion for judgment as a matter of law and, in the alternative, for a new trial. The district court denied these motions and 3M appealed.

**DISCUSSION**

3M raises five issues on appeal. First, 3M argues that the trial court erred by denying 3M's motions for judgment as a matter of law. Second, 3M asserts the trial court erred in admitting plaintiff's expert testimony. Third, 3M contends the trial court's exclusion of Wood's employer's payment for damages to 3M's

locomotive under Fed.R.Evid. 408 constituted prejudicial error.  Fourth, 3M argues the trial court's jury instruction regarding the duty of the 3M railroad to keep a lookout on the train was prejudicially improper.  Fifth, 3M believes the jury verdict was against the weight of the evidence and required a new trial.   We consider these arguments in turn.

## I.

3M first argues that the district court erred by denying 3M's motion for a verdict as a matter of law:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party . . . .

Fed.R.Civ.P. 50.  In making this determination, the trial judge must "view the evidence in the light most favorable to the plaintiff, and to give the plaintiff the benefit of all favorable inferences reasonably to be drawn from the evidence."  Lang v. Cone, 542 F.2d 751, 754 (8th Cir. 1976); Croom v. Younts, 323 Ark. 95, 913 S.W.2d 283, 286 (1996).  "We review the district court's denial of a motion for judgment as a matter of law de novo using the same standards as the district court."  Keenan v. Computer Assoc. Int'l, Inc., 13 F.3d 1266, 1268 (8th Cir. 1994).

3M is not entitled to a verdict as a matter of law.  Wood introduced evidence of an essentially unguarded rail crossing  lacking guards, lights, or crossbucks.  The effectiveness of stop signs was, at best, nominal. Finally, the train's horn failed to alert Wood because it faced the opposite direction.  Viewing the

evidence in the light most favorable to Wood supports the trial court's denial of 3M's motion for judgment as a matter of law.

## II.

3M next argues that the district court erred by admitting the testimony of Archie Burnham and by excluding evidence of a payment by Wood's employer to 3M for damage to 3M's train. We review these evidentiary rulings only for an abuse of discretion. Crues v. KFC Corp., 768 F.2d 230, 233 (8th Cir. 1985). We consider these arguments in turn.

## A.

Archie Burnham testified as an expert regarding whether 3M properly constructed the railroad crossing and provided reasonable warning of that crossing. 3M argues that the trial court abused its discretion because Burnham's testimony was irrelevant and unreliable. We disagree.

Federal Rule of Evidence 702 governs the admissibility of expert testimony and the trial judge screens such evidence for relevance and reliability. Daubert v. Merrell Dow Pharmaceutical, Inc., 509 U.S. 579, 589 (1993). In order to determine relevance, the trial court reviews the expert testimony to ensure it is scientifically based and will assist the trier of fact in determining a fact at issue. Id. at 589-90. The exclusion of an expert's opinion is proper only if it is "`so fundamentally unsupported that it can offer no assistance to the jury . . . .'" Hose v. Chicago Northwestern Transp. Co., 70 F.3d 968, 974 (8th Cir. 1995) (quoting Loudermill v. Dow Chem. Co., 863 F.2d 566, 570 (8th Cir. 1988)).

The district court noted several facts relating to Burnham's career which qualify him as an expert. For example, Burnham, a highway safety specialist, completed graduate studies at Yale University. During his thirty-year career with the Georgia Department of Transportation, he spent sixteen years directing the office of traffic and safety which oversees all of the state's public railroad crossings. In addition, Burnham was a contributing editor of an important text regarding traffic engineering as it applies to railroad crossings. Accordingly, the court properly considered him an expert in the field of traffic control systems and railroad crossings.

The trial court also engaged in a lengthy hearing before determining that Burnham's testimony was relevant. Appellees' App. at 90-100. Burnham's testimony assisted the jury in determining whether 3M properly constructed a railroad crossing on its property and whether 3M provided reasonable warning of that crossing. The district court informed the jury that Burnham's testimony was not evidence of a legal violation by 3M. Appellees' App. at 111-112.[1] We do not believe that the trial court erred in determining that the testimony would assist the jury in determining whether the crossing was reasonably safe.

In addition, the district court implicitly determined that the testimony was reliable. 3M, however, asserts Burnham's methodology and fact-gathering techniques relating to his decibel readings and site distance triangulation were suspect. The district court reviewed this methodology at length and did not abuse its

---

[1]"I want you to understand the witness is not telling you that he thinks there's any Arkansas law or regulation that requires a cross buck. He's giving you his opinion as to what he thinks is the prudent thing to do on private crossings." Appellees' App. at 112.

discretion in determining that Burnham's methodology was sound. Furthermore, the fact that Burnham lacked expertise in private crossings did not render his testimony unhelpful.

Finally, 3M argues that the district judge failed in his duty as the "gatekeeper" for the expert testimony. Before trial, Burnham stated that he would not testify about the operation of the brake system or whether the train engineer applied the brakes too late. At trial, however, Burnham testified to both issues without objection. Even if such testimony was inappropriate, we conclude that admitting it was harmless error. We do not believe the jury's verdict would have been different without this testimony.

We conclude, therefore, that the district court did not abuse its discretion by admitting Burnham's testimony.

B.

3M also asserts that the district court erroneously excluded 3M's evidence that Wood's employer, Silica Transport, paid $28,000 for damages to 3M's locomotive. The district court refused to admit this evidence under Fed.R.Evid. 408, which states in relevant part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. . . .

3M asserts that, in order for Rule 408 to be operative, litigation must be taking place or threatened and cites to S.A.

<u>Healy Co. v. Milwaukee Metro Sewerage Dist.</u>, 50 F.3d 476, 480 (7th Cir. 1995), for support. In this case, Silica Transport paid 3M $28,000 approximately two years before Wood filed his lawsuit.

We need not reach that issue, however, because we conclude that the payment by Wood's employer was irrelevant to Wood's case against 3M. Fed.R.Evid. 402. The employer's financial concession is not binding in any way on Wood's legal action. Even if relevant, we conclude that this evidence's unfair prejudicial effect substantially outweighs its probative value because a jury could be unfairly swayed by evidence of Silica's financial concession to 3M. Fed.R.Evid. 403. Accordingly, the district court properly excluded evidence of Silica's payment to 3M.

III.

3M next argues that the district court gave an incorrect jury instruction. The district court submitted the following instruction, entitled <u>Duty of Railroad To Keep Lookout</u>, over 3M's objection:

> All persons operating trains upon any railroad in this state shall have the duty to keep a constant lookout for persons and property upon, near, or approaching the railroad track. A violation of this duty is negligence.
>
> This does not mean that each member of the train crew must keep a constant lookout, but it does mean that an efficient lookout must be kept by some member of the crew at all times.

Appellant's App. at 399. Arkansas law states: "It shall be the duty of all persons running trains in this state upon any railroad to keep a constant lookout for all persons, including licensees and trespassers, and property upon the track of any and all railroads."

Ark. Code Ann. § 23-12-907(a)(1) (1995).  We review the district court's determinations of state law de novo.  Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

3M objected to this instruction, arguing that the statute  applied to public railroads involved in interstate commerce and not to private railroads such as 3M's.  3M further argues that the Arkansas statute regards "railroads" as being "on an equal basis with other persons, firms, and corporations . . . ."  Ark. Code. Ann. §§ 23-12-901, 23-12-907(c).  According to 3M, the legislature expressed its intention to treat "railroads" as a separate jural entity which could sue and be sued, like any other person, firm, or corporation.  In short, 3M asserts the instruction effectively imposed an obligation on 3M that state law did not recognize.

The district court determined that the statute "applies only to `all persons operating trains,' it does not require it to be a railroad corporation or common carrier, and there's no requirement that it be a public road, and, therefore, I think all of the definitions in the instruction are met by the facts in the case."  Appellee's App. at 205.  We agree that a plain reading of the statute supports the district court's jury instructions regarding 3M's duty to keep a lookout on its railroad.

Alternatively, 3M argues that the instruction was unwarranted in this case because 3M introduced undisputed evidence that the train engineer kept a lookout, saw the truck, blew the horn, applied the brakes, yelled and waved to warn Wood of the approaching train.  We disagree.  Whether the engineer kept an adequate lookout was a fact question for the jury and we decline to disturb that conclusion here.

IV.

Finally, 3M contends that the district court erroneously denied 3M's motion for a new trial because the verdict is against the weight of the evidence. The authority to grant or deny a new trial is a matter within the district court's discretion and is not to be reversed absent a clear abuse of that discretion. <u>Keenan</u>, 13 F.3d at 1269. "The key question is whether a new trial should have been granted to avoid a miscarriage of justice." <u>Id.</u> Where, as here, the "basis of the motion for a new trial is that the jury's verdict is against the weight of the evidence, the district court's denial of the motion `is virtually unassailable on appeal.'" <u>Keenan</u>, 13 F.3d at 1269 (quoting <u>Peterson ex rel. Peterson v. General Motors Corp.</u>, 904 F.2d 436, 439-40 (8th Cir. 1990)). Based on the facts presented at trial and discussed in Section I, there is evidence to support the jury's verdict. Accordingly, we decline to do disturb the jury verdict.

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-