NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WING ENTERPRISES, INC., DBA LITTLE GIANT LADDER SYSTEMS,**
*Plaintiff-Appellant*

**v.**

**TRICAM INDUSTRIES, INC.,**
*Defendant-Appellee*

---

2019-2279

---

Appeal from the United States District Court for the District of Minnesota in No. 0:17-cv-01769-ECT-ECW, Judge Eric C. Tostrud.

---

Decided: September 25, 2020

---

MARK A. MILLER, Dorsey & Whitney LLP, Salt Lake City, UT, argued for plaintiff-appellant. Also represented by ELLIOT HALES; TIMOTHY J. DROSKE, Minneapolis, MN.

ERIC CHADWICK, DeWitt LLP, Minneapolis, MN, argued for defendant-appellee. Also represented by ZACHARY PAUL ARMSTRONG.

---

Before PROST, *Chief Judge*, REYNA and TARANTO, *Circuit Judges*.

PROST, *Chief Judge*.

The United States District Court for the District of Minnesota granted defendant Tricam Industries, Inc.'s ("Tricam") motion to exclude testimony from plaintiff Wing Enterprises, Inc.'s ("Wing") expert and granted Tricam's motion for summary judgment.  *See Wing Enters., Inc. v. Tricam Indus., Inc.*, No. 17-cv-01769, 2019 WL 2994465 (D. Minn. July 10, 2019) ("*Decision*").  Wing appeals.  For the reasons below, we reverse-in-part, affirm-in-part, and remand.

I

Wing, a manufacturer of multi-position ladders under the Little Giant brand, sued Tricam, a manufacturer of multi-position ladders under the Gorilla Ladders brand, for false advertising under both the Lanham Act, 15 U.S.C. § 1125(a), and the Minnesota Deceptive Trade Practices Act ("DTPA"), Minn. Stat. § 325D.44, as well as for patent infringement.  The parties resolved the patent-related disputes, leaving only the false-advertising claims.[1]

Wing's false-advertising claims center on its allegation that Tricam falsely advertised that its Gorilla Ladders comply with American National Standards Institute ("ANSI") A14.2.  ANSI A14.2 is an industry safety standard that applies to metal multi-position ladders, such as those in this case.  Wing contends that Tricam's ladders do not

---

[1]    The district court determined that the standards for a false-advertising claim under the Lanham Act and the DTPA are the same.  *See Decision*, 2019 WL 2994465, at *2.  The parties have not challenged this determination.  Like the district court and parties, we therefore focus on caselaw surrounding the Lanham Act.

meet the requirements of ANSI A14.2 Section 6.7.5.  This section requires that the rung on a multi-position ladder have a "step surface of not less than 1 inch."  Appellee's Br. 4 (citing J.A. 2502–03).

Wing alleged three instances of Tricam falsely advertising ANSI conformance: (1) the label on the side of Tricam's ladders, which reads "manufacturer certifies conformance to OSHA ANSI A14.2 code for metal ladders," Appellant's Br. 18 (capitalization normalized); (2) the statement on The Home Depot's website, which reads "ANSI Certified, OSHA Compliant," *id.* at 20; and (3) the statement on Tricam's website, which reads "ANSI A14.2; OSHA," *id.* at 20 n.16.

To prevail on a false-advertising claim, a plaintiff must, among other things, prove that "the deception is material, in that it is likely to influence the purchasing decision." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998).  To help prove materiality, Wing commissioned Mr. Hal Poret to conduct two surveys.  These surveys have been called the Importance Survey and the Labeling Survey.

The Importance Survey asked respondents to rank the factors they consider important when purchasing a ladder.  The survey provided respondents with a list of factors, which included "strength/duty rating," "compliance with industry safety standards," "hinge lock size/style," "feet material/style," and "company name."  J.A. 4891–92 (capitalization normalized).  According to Mr. Poret, the survey results showed that "compliance with industry safety standards was ranked first as the most important factor by more respondents (19%) than any other factor except for strength/duty rating" and that a "total of 58% of respondents rated compliance with industry safety standards an important factor."  J.A. 4894 (emphasis omitted).  From these results, Mr. Poret concluded that "compliance with industry safety standards is the type of issue that is

important to consumers and would tend to . . . impact purchase decisions." J.A. 4894.

The Labeling Survey showed a test group the side labeling of a Gorilla Ladder containing the allegedly false ANSI statement as well as a statement about OSHA compliance. J.A. 4882–83. It then showed a control group "an altered version" of the labeling in which "all references to compliance with OSHA/ANSI standards were removed." J.A. 4883. The survey results showed that 69% of the test group members indicated that they were "extremely or very likely to purchase the ladder with the OSHA/ANSI content present," which "exceeded the corresponding Control Group rate (55%) by a margin of 14%." J.A. 4893. Based on the survey's results, Mr. Poret concluded that the "OSHA/ANSI content did have a significant impact on reported likelihood of purchase." J.A. 4894.

Tricam also presented survey results. Of relevance, Tricam retained Dr. Debbie Triese "to conduct survey market research to determine if the ANSI statement on the one side label does, in fact, influence consumers' purchasing of multi-position ladders." J.A. 3714. While Dr. Triese concluded from her survey results that "only 2% of the . . . respondents [in her survey] could have potentially been influenced by the ANSI label," J.A. 3734, as Wing points out, the survey results also showed that 67.5% of survey respondents "stated they had read the side label before buying the ladder," 42.4% of the respondents had heard of ANSI, and 21.9% of the respondents clearly knew what ANSI was, J.A. 3727–29, 4827–28. Dr. Triese's expert report also observed that Mr. Poret had failed to "isolate the effect, if any, of the ANSI" statement on consumers, focusing instead on the effect of an ANSI-OSHA statement or on industry safety standards in general. J.A. 4951.

Nearly two months after the close of fact discovery and one week after receiving Dr. Triese's report, Wing moved to supplement its responses to Tricam's initial

interrogatories. In particular, Wing wanted to supplement its responses to interrogatories asking Wing to "'[i]dentify with specificity the alleged misleading or false statement(s) made by Tricam.'" J.A. 861 (alteration in original). Wing's initial responses to these interrogatories did not mention OSHA. *See, e.g.*, J.A. 861 ("Tricam's false statements include but are not limited to Tricam's representation . . . that its accused ladders are ANSI compliant."). Wing's supplemental responses, however, included OSHA. *See, e.g.*, J.A. 862 ("'Manufacturer certifies conformance to OSHA ANSI A 14.2 Code for metal ladders' . . . . [T]he [multi-position] ladders do not comply with all aspects of the ANSI A14.2 standard, which is the basis for Tricam asserting that the [multi-position] ladders are ANSI and OSHA compliant . . . ." (capitalization normalized)). In a detailed analysis not challenged on appeal, the magistrate judge concluded that Wing failed to timely disclose its OSHA-related contentions and struck Wing's supplemental interrogatory responses. *See* J.A. 861–95. The magistrate judge reasoned that allowing Wing to supplement its interrogatory responses after the close of fact discovery would prejudice Tricam because Tricam would have to "re-litigate the case based on a new contention that the OSHA statements were false" and incur "the consequent delay and expense." J.A. 893.

Shortly thereafter, Tricam moved to exclude testimony from Mr. Poret about his surveys, arguing that the surveys were not relevant. On the same day, Tricam also moved for summary judgment, arguing that Wing could not meet its burden to establish any of the five elements of a false advertising claim.

Before it addressed Tricam's motion to exclude testimony, the district court first recounted the magistrate judge's order striking Wing's supplemental interrogatory responses. The court then discussed both of Mr. Poret's surveys and granted Tricam's motion to exclude Mr. Poret's testimony about both surveys. In excluding testimony

about the Importance Survey, the district court determined that the survey results were "not relevant to the question of whether the ANSI-conformance statement that is at issue in this case is material to consumers' purchasing decisions." *Decision*, 2019 WL 2994465, at \*11. The district court reasoned that "[k]nowing that industry safety standards in general are important to consumers' purchasing decisions does nothing to predict whether consumers might be dissuaded from buying a ladder that does not meet current ANSI standards" because Mr. Poret did not "ask about ANSI specifically." *Id.*

In excluding testimony about the Labeling Survey, the district court determined that the results of the survey were not relevant because it "tested the importance of ANSI conformance *in combination with* OSHA conformance." *Id.* at \*5 (emphasis in original). The court also excluded the Labeling Survey for two additional reasons. First, the district court determined that jury confusion would exist in light of Wing "not arguing that the OSHA-conformance statement is false" yet having its survey evidence premised "on the conclusion that the OSHA-conformance statement is false." *Id.* at \*11. Second, with the magistrate judge having ruled that OSHA conformance was never part of the case, *see* J.A. 861–95, the district court determined that Tricam would be unfairly prejudiced if the Labeling Survey was included because Tricam lacked an opportunity to take meaningful discovery on the interplay between ANSI and OSHA.

After excluding testimony about either the Importance Survey or the Labeling Survey, the district court granted Tricam's summary judgment motion, concluding that Wing could not meet its burden with respect to materiality. The court determined that the admissible evidence—testimony from a high-level Wing executive, Tricam's president, and the chairman of the ANSI Labeling Committee—was too speculative to help Wing overcome Tricam's summary judgment motion. The court also declined to adopt the

"inherent quality or characteristic" test, a test that has not been applied by the Eighth Circuit, to show materiality. Accordingly, the district court granted Tricam's motion for summary judgment.

Wing timely appealed, challenging both the district court's exclusion of Mr. Poret's testimony and its grant of summary judgment. This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

### A

We review a district court's exclusion of evidence under the law of the regional circuit. *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1082 (Fed. Cir. 2014). The Eighth Circuit reviews a district court's exclusion of expert testimony for abuse of discretion. *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 448 (8th Cir. 2008).

"[A]dmissibility of expert testimony is governed by Federal Rule of Evidence 702; under Rule 702 the trial judge acts as a 'gatekeeper' screening evidence for relevance and reliability." *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). "'Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. The rule clearly is one of admissibility rather than exclusion.'" *Id.* (quoting *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001)). Accordingly, an expert's opinion should be excluded only "if it is so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (internal quotation marks omitted).

In applying Rule 702, the Eighth Circuit has stated that the "evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy." *Lauzon*, 270 F.3d at 686 (citation omitted).

8          WING ENTERPRISES, INC. v. TRICAM INDUSTRIES, INC.

Further, "under *Daubert* and Rule 403 of the Federal Rules of Evidence, the probative value of the expert testimony must not be substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury." *United States v. Solorio-Tafolla*, 324 F.3d 964, 966 (8th Cir. 2003).

B

The district court excluded Mr. Poret's testimony about the results of the Importance Survey because it determined that the results were "not relevant to the key question in this case," which the court framed as whether "the ANSI-conformance statement . . . is material to consumers' purchasing decisions." *Decision*, 2019 WL 2994465, at *11.

Wing contends that the district court abused its discretion. Specifically, Wing contends that the court improperly narrowed the field of relevant evidence by requiring the Importance Survey to ask specifically about ANSI conformance. Wing argues that the Importance Survey clears the low hurdle of relevance because the survey answers the question of whether consumers consider compliance with industry safety standards to be important.

Tricam counters that the district court did not abuse its discretion in determining that testimony about the Importance Survey would not be relevant. In support, Tricam argues that the Importance Survey is not relevant because the survey only asks about generic industry safety standards and not specifically about ANSI. Tricam also contends that the Importance Survey does not show that consumers even know that ANSI is an industry safety standard. Without Wing demonstrating that consumers know ANSI is an industry safety standard, the Importance Survey cannot be relevant, Tricam argues.

The district court's only reason for excluding Mr. Poret from testifying about the Importance Survey was that such testimony would not be relevant. Evidence is relevant,

however, if the evidence "has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." Fed. R. Evid. 401. And expert testimony should be admissible unless it is "so fundamentally unsupported that it can offer no assistance to the jury." *Wood*, 112 F.3d at 309. Because Mr. Poret's testimony concerning the Importance Survey would have at least some tendency to make a fact of consequence more probable than it would be without the evidence, and because such testimony is not so unsupported that it would offer no help to the jury, we determine that the district court abused its discretion in excluding Mr. Poret from testifying about the Importance Survey.

As Wing points out, the Importance Survey suggests that ladder consumers consider compliance with industry safety standards to be important when making purchasing decisions. Because ANSI is unquestionably an industry safety standard and is one of the two potential industry safety standards relating to ladders in the United States, the results of the Importance Survey have *at least some* tendency to make a fact of consequence—namely, the importance of ANSI compliance to ladder purchasers—more probable than it would be without the evidence.

It is true that the Importance Survey did not ask specifically about ANSI and instead asked about compliance with industry safety standards in general. But such a focus does not automatically establish that testimony about the survey results is not relevant. For example, other district court judges for the District of Minnesota have recognized the relevance of surveys in the materiality analysis notwithstanding that these surveys did not ask about the particular statement or product at issue. *See, e.g.*, *Comfort Corp. v. Tempur Sealy Int'l, Inc.*, No. 13-2451, 2016 WL 5496340, at *15–16 (D. Minn. Sept. 28, 2016) (denying motion to exclude survey as not relevant to materiality notwithstanding that the survey did "not test the actual statements made" but instead used "Test Statements");

*Aviva Sports, Inc. v. Fingerhut Direct Mktg.*, 829 F. Supp. 2d 802, 814 (D. Minn. 2011) (determining that a study "can reasonably provide circumstantial evidence of materiality with respect to . . . products that were not included in th[e] study"). Similarly, although outside the context of materiality, the Eighth Circuit has determined expert testimony to be admissible as reliable and relevant even though the testimony did not address the exact facts at hand but instead provided a more general explanation. *See, e.g.*, *Hartley v. Dillard's Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002) (affirming admission of expert testimony that "explained the general trend of mall stores losing market share to non-mall competitors," even though the case centered on a particular mall store's loss of profits).

In its briefing and further highlighted during oral argument, Tricam argued that *3M Innovative Properties Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958 (D. Minn. 2005), made clear that evidence is relevant to materiality only if it asks about the particular statement-at-issue. We do not read *3M Innovative* as standing for such an exacting requirement. In *3M Innovative*, the alleged false statement related to the advertising of a product as "new," and the evidence put forward regarding materiality showed that consumers' purchasing decisions were based on the "product's performance." *See id.* at 971–72. The court ultimately determined that the record was "devoid of admissible evidence that would allow a reasonable jury to find or to infer that customers relied on the 'new, rheology-modified' statements in making purchasing decisions." *Id.* at 972.

In *3M Innovative*, the alleged false statement related to the claim that the product was "new," while the evidence of materiality submitted showed that consumers cared about product performance. Plaintiffs there failed to establish a relationship between the product being "new" and the product's performance. In this case, however, the Importance Survey asked about industry safety standards

and ANSI is an industry safety standard. Here, Wing has provided a relationship between the Importance Survey and the ANSI statements.

Tricam also maintains that the Importance Survey is not relevant because it does not show that consumers know that ANSI is an industry safety standard. This argument seems aimed more at the weight that the Importance Survey's results should be accorded than whether the survey is relevant. Still, as the district court determined, ladder consumers could potentially ascertain that ANSI is an industry safety standard based on how Tricam displayed ANSI conformance. *See Decision*, 2019 WL 2994465, at *11. Further, Dr. Triese's survey results suggest that consumers know that ANSI is an industry safety standard. J.A. 3727–29, 4827–28.

To the extent that Tricam maintains that Wing and Mr. Poret cannot rely on Dr. Triese's survey results regarding consumer awareness of ANSI, we disagree. First, this argument does not appear to have been raised before the district court. In fact, the district court considered and cited Dr. Triese's survey. *See, e.g.*, *Decision*, 2019 WL 2994465, at *7, *11. Second, contrary to Tricam's suggestion, Wing not only uses Dr. Triese's survey results to attempt to independently create a triable issue for the jury, *see* Appellant's Br. 46–47, but also uses Dr. Triese's survey results to refute Tricam's contention that consumers would not recognize ANSI as an industry safety standard, s*ee* Reply Br. 8–9 (arguing that Dr. Triese's survey results refute Tricam's argument "that consumers don't know what ANSI is"). Put another way, Wing cites Dr. Triese's survey results to refute an argument advanced by Tricam. Third, although neither party cites binding Eighth Circuit precedent about the use of an opposing party's expert's survey or report, the main case Tricam relies on to argue that Wing cannot point to Dr. Triese's report concludes that whether a party may rely on an opposing expert "is committed to the sound discretion of the district court." Reply Br. 7

(quoting *N5 Techs. LLC v. Capital One N.A.*, 56 F. Supp. 3d 755, 765–66 (E.D. Va. 2014)).  Here the district court found no issue with Wing "point[ing] to survey evidence generated by one of Tricam's experts"—Dr. Triese.  *Decision*, 2019 WL 2994465, at *11 (citing J.A. 4827–28).

Accordingly, although the Importance Survey results might have more probative value if the survey had asked about ANSI compliance specifically, that it did not does not establish that the results are not relevant.  We therefore agree with Wing that the district court abused its discretion in excluding Mr. Poret's testimony about the Importance Survey.

C

The district court also granted Tricam's motion to exclude Mr. Poret's testimony about the results of the Labeling Survey.  The court determined that the survey was not relevant and that its inclusion would cause jury confusion and unfair prejudice to Tricam.  *See Decision*, 2019 WL 2994465, at *11.  The court reasoned that testimony about the Labeling Survey would not be relevant because the Labeling Survey did not ask specifically about ANSI and was premised on Tricam's ladders not complying with OSHA, would cause jury confusion because it conflated ANSI and OSHA compliance, and would unfairly prejudice Tricam because Tricam had previously lacked reason to conduct discovery related to the interplay of ANSI and OSHA.

Wing argues that the district court abused its discretion in focusing too heavily on the fact that the Labeling Survey did not separate ANSI compliance from OSHA compliance.  Wing also argues that including the Labeling Survey would not result in jury confusion or unfair prejudice.  In arguing that jury confusion could be limited, Wing contends that a jury could be instructed that the Labeling Survey "is submitted solely as it relates to the materiality of the ANSI label, and that Wing's claim of liability is in no way based upon whether Tricam's reference to OSHA

compliance is false." Reply Br. 21. In arguing that Tricam would not face unfair prejudice, Wing contends that the magistrate judge's order, which struck Wing's supplemental interrogatory responses, already addressed any unfair prejudice Tricam could face. Reply Br. 20–21.

It is our view that Wing has not demonstrated that the district court abused its discretion in excluding the Labeling Survey.

First, the district court was not deciding whether testimony about the Labeling Survey was relevant on a clean slate. Rather, the district court's ruling came after the magistrate judge's order striking Wing's supplemental interrogatory responses. *See Decision*, 2019 WL 2994465, at *7 (referring to the magistrate judge's order as setting the "backdrop" for the court's ruling to exclude Mr. Poret's testimony). As the magistrate judge's order made clear, compliance with OSHA was not part of the case. *See, e.g.*, J.A. 890. The order also detailed the "significant" prejudice Tricam would face if OSHA conformance became part of the case. *See* J.A. 892–94. In addition, as the district court determined, the Labeling Survey is premised on the assumption that Tricam's ladders do not comply with OSHA. *Decision*, 2019 WL 2994465, at *11. In light of OSHA compliance not being part of this case, we disagree that the court abused its discretion when it excluded testimony about the survey. *See Daubert*, 509 U.S. at 591–92 (describing the consideration of relevance as one of "fit"); *id* at 591 ("Expert testimony which does not relate to any issue in the case is not relevant").

Further, the district court determined that allowing testimony about the Labeling Survey would result in jury confusion. Specifically, the court noted that it had "difficulty imagining[] how a jury might be instructed that, although Wing is not arguing that the OSHA-conformance statement is false, its survey evidence is premised on the conclusion that the OSHA-conformance statement is false."

*Decision*, 2019 WL 2994465, at *11. Wing suggests that the jury can be instructed that the Labeling Survey is submitted only as it relates to the materiality of the ANSI label. Reply Br. 21. Such a suggestion, however, does not alleviate the concern that the Labeling Survey is premised on the conclusion that the OSHA-conformance statement is false, *see, e.g.*, J.A. 4894 (Mr. Poret concluding that the Labeling Survey showed that the "OSHA/ANSI content did have a significant impact on reported likelihood of purchase"), or demonstrate that the district court abused its discretion.

The district court also reasoned that allowing Mr. Poret to testify about the Labeling Survey would result in unfair prejudice because of Tricam's "lack of opportunity to take meaningful discovery on the interplay between ANSI and OSHA" and that the Labeling Survey "assumes a degree of equivalence between the two." *Decision*, 2019 WL 2994465, at *11. As the magistrate judge's order made clear, before supplementing its interrogatory responses, Wing never alleged that Tricam's advertisement of OSHA compliance was false. Therefore, Tricam had no reason to engage in discovery related to OSHA compliance or the relationship between ANSI and OSHA. In its reply brief, Wing argues that allowing Mr. Poret to testify would not result in unfair prejudice to Tricam because any alleged OSHA-related false-advertising claim was struck from the case in the magistrate judge's order. Reply Br. 21. Such an argument, however, does not address the district court's concern that the Labeling Survey presumes a relationship between OSHA and ANSI, *see, e.g.*, J.A. 4889 (describing the survey was designed to "establish a measurement of how likely respondents indicate they would be to purchase the ladder when shown the labelling content that includes reference to OSHA/ANSI compliance"), a relationship that Tricam never had reason to engage in discovery over.

Accordingly, we disagree with Wing that the district court abused its discretion in excluding testimony about the Labeling Survey.

## III

### A

In reviewing a district court's decision to grant summary judgment, we apply the law of the regional circuit in which the district court resides. *VersaTop Support Sys., LLC v. Ga. Expo, Inc.*, 921 F.3d 1364, 1368 (Fed. Cir. 2019). In the Eighth Circuit, a grant of summary judgment is reviewed de novo. *Buetow v. A.L.S. Enters.*, 650 F.3d 1178, 1185 (8th Cir. 2011). In deciding a summary judgment motion, the court "views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). Summary judgment is proper if there exists no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. *Sappington*, 512 F.3d at 445 (citing Fed. R. Civ. P. 56(c)); *see also Riedl v. Gen. Am. Life Ins. Co.*, 248 F.3d 753, 756 (8th Cir. 2001) ("[S]ummary judgment is inappropriate when the record permits reasonable minds to draw conflicting inferences about a material fact.").

Relevant to this case, for a plaintiff to establish a false-advertising claim, the plaintiff must prove that the deception is "material," in that it is "likely to influence the purchasing decision." *United Indus.*, 140 F.3d at 1180.

### B

The district court, in granting Tricam's summary judgment motion, had excluded the Importance Survey from its materiality analysis. As discussed, the Importance Survey is relevant and should have been included in the analysis.

As already noted, the Importance Survey suggests that consumers consider compliance with industry safety standards an important consideration when making a purchasing decision.  In addition, the district court acknowledged that it could be possible for consumers to discern that ANSI is an industry safety standard.  Further, Dr. Triese's survey data shows that 42.4% of ladder consumers had heard of ANSI and 21.9% of ladder shoppers clearly knew what ANSI was.  J.A. 3727–28.  In view of this evidence and taking the inferences that may reasonably be drawn from the evidence in the light most favorable to Wing, the nonmoving party, we determine that a reasonable jury could find in favor of Wing as to the materiality element.[2]  We determine, therefore, that the district court improperly granted Tricam's summary judgment motion on materiality.

Because we determine that the district court improperly granted summary judgment based on the premise that testimony about the Importance Survey was not relevant, we find it unnecessary to consider Wing's other arguments about whether the district court erred in granting summary judgment on the materiality element.  Further, with respect to the alternative grounds of affirmance that Tricam raises that are separate from the materiality

---

[2]     We also note that the district court recognized the potential for a triable issue as to the materiality element of Wing's claim if the court had included the Importance Survey.  *See* J.A. 5336 (declining Tricam request for attorneys' fees and stating that had Mr. Poret been allowed to testify, "it would have created a triable issue of fact as to the materiality element of Wing's claims").  Although the district court here was discussing inclusion of testimony about both the Importance Survey and Labeling Survey, this nevertheless reinforces our conclusion that a triable issue exists when the Importance Survey is included as relevant evidence.

element, *see, e.g.*, Appellee's Br. 40, the district court did not rule on these grounds. Rather, the district court stated that these alternative grounds, relating to other elements of a false-advertising claim, involved "novel or substantially unsettled legal issues." *Decision*, 2019 WL 2994465, at *12. Accordingly, rather than resolve these issues without the benefit of the district court's reasoning, we determine that the proper course of action is to remand to the district court to consider whether summary judgment may be proper on other grounds. *See, e.g.*, *Spigen Korea Co., Ltd. v. Ultraproof, Inc.*, 955 F.3d 1379, 1385 (Fed. Cir. 2020) (declining to consider alternative grounds for affirmance of summary judgment when the district court did not decide certain grounds in the first instance).

## IV

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons we reverse-in-part, affirm-in-part, and remand.

## REVERSED-IN-PART, AFFIRMED-IN-PART, AND REMANDED

### COSTS

The parties shall bear their own costs.